UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                                     :

THE GUARDIAN LIFE INSURANCE
COMPANY OF AMERICA,
                                  Plaintiff,   :           13-CV-2047 (JPO)

              -v-                              :           <u>OPINION AND ORDER</u>

LIBERTY WEALTH STRATEGIES, LLC,
CARLOS LIBERTY ROCHA, SEAN FRANK
McIVOR, KIM LEE MYERS,
                                Defendants.
-------------------------------------------------------------X

J. PAUL OETKEN, District Judge:

       This action arises out of an agency relationship between Plaintiff, The Guardian Life Insurance Corporation of America ("Guardian"), and Defendants Liberty Wealth Strategies, LLC ("Liberty") and its individual members Carlos Liberty Rocha, Kim Lee Myers, and Sean Frank McIvor.[1] Guardian claims that Defendants owe $832,117.83, plus interest accruing during the pendency of this action. (Dkt. No. 28, Plaintiff's Rule 56.1 Statement, at ¶ 163 [hereinafter: "Pl.'s 56.1"].) Defendants counter-claim that Guardian withheld money due to Liberty, undermined Defendants' business by delaying the start of the agency relationship, improperly billed Defendants for payments on a commercial lease, and improperly billed Defendants for certain other expenses. Guardian moves for summary judgment on its claims and Defendants' counterclaims. For the reasons that follow, Guardian's motion is granted.

---

[1] The LLC Defendant has not appeared through counsel. Its counterclaims are dismissed for failure to prosecute. (*See* Dkt. No. 35, Scheduling Order and Order to Appear Through Counsel.) Only the individual Defendants remain.

1

**I.     Background**[2]

From 2004 to 2008, Rocha served as a "career development manager" at Guardian's Seattle agency. (Pl.'s 56.1 at ¶19.) In this capacity, he sold insurance policies and other financial products on Guardian's behalf, apparently with considerable success. (*See id.* at ¶ 34.) As a manager, Rocha was authorized to hire two "career development supervisors." (*Id.* at ¶ 24.) He chose McIvor and Myers. (*Id.*)

In 2008, Rocha, McIvor, and Myers (the Individual Defendants) decided to become general agents of Guardian. They incorporated Liberty as an LLC under Washington law, with Rocha owning an 80% interest, and McIvor and Myers each owning 10% interests. Liberty negotiated a series of agreements with Guardian establishing the agency relationship. Pursuant to these agreements, Guardian provided Liberty with a rotating line of credit to cover operating expenses. Liberty was expected to pay the debts amassed out of the commissions it earned selling insurance policies. Because Guardian was concerned about Liberty's limited liability under Washington law, it required Rocha, McIvor, and Myers to sign individual promissory notes guaranteeing payment on any Liberty debt that went unpaid. Rocha asserts that it was Guardian's policy to "slip in" individual promissory notes. (Dkt. No. 38, Defendant Rocha's Response, at 2.) Guardian insists that all three Individual Defendants were given an opportunity to read each contract that they signed and that they either read the contracts or deliberately chose not to. (*See generally* Pl.'s 56.1.)

After Defendants started the agency, business apparently took a turn for the worse. According to Guardian, Defendants began failing to pay for various expenses and eventually

---

[2] Defendants have not filed a formal response to Plaintiff's statement of uncontested facts made pursuant to Local Civil Rule 56.1. They have responded by letter. The Court treats their letters as responses to the Rule 56.1 statement as well as to the motion for summary judgment. Unless the Court specifies otherwise, the facts described are uncontested.

amassed approximately $830,000 of debt (*e.g.*, Pl.'s 56.1 at ¶ 28), in response to which Guardian began withholding commission payments on Defendants' insurance sales. (*Id.* at ¶ 169.) Defendants maintain that their business woes were caused by Guardian's "routine[] and continuous[] act[ions] to undermine Liberty's efforts and deprive Liberty of substantial income and revenues." (Dkt. No. 38, Defendant Rocha's Response, at 1.) These actions include: (1) delaying the start of the agency arrangement by about three months, which "damaged Liberty's business and unfairly broke Liberty's momentum going forward"; (2) failing to "provide promised transition assistance to Liberty"; and (3) withhold[ing] excessive commissions" and "roll[ing]-over expenses" from the time when Rocha, McIvor, and Myers were Guardian employees. (*Id.* at 1-2.)

Defendants were represented by counsel at the outset of this litigation. Since then, counsel was granted permission to withdraw. (*See* Dkt. No. 34, Order Granting Motion to Withdraw.) Individual Defendants now appear pro se.

## II. Discussion

### A. Legal Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A fact is material if it "might affect the outcome of the suit under the governing law," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and a dispute is genuine if, considering the record as a whole, a rational jury could find in favor of the non-moving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The initial burden of a movant on summary judgment is to provide evidence on each element of her claim or defense illustrating her entitlement to relief. *Vermont Teddy Bear Co. v. 1–800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004). If the movant meets this initial burden

of production, the non-moving party must then identify specific facts demonstrating a genuine issue for trial. Fed. R. Civ. P. 56(f). The court views all evidence "in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in its favor." *Anderson*, 447 U.S. at 250–51. A motion for summary judgment may be granted only if "no reasonable trier of fact could find in favor of the nonmoving party." *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (citation omitted). But the non-moving party cannot rely upon mere "conclusory statements, conjecture, or speculation" to meet its burden. *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996) (citing *Matsushita*, 475 U.S. at 587).

The contracts at issue in this case include a New York choice-of-law clause. (*See, e.g.*, Dkt. No. 29-2, Plaintiff's Exhibit 13, at 2.) Because the general agreements are essentially contracts for services, they are governed by New York's common law and general obligations law. N.Y. Gen. Oblig. Law § 1-201 (McKinney 2014). The promissory notes, which are negotiable commercial paper, are governed by Article Three of New York's Uniform Commercial Code. *See* N.Y. U.C.C. Law §§ 3-101, *et. seq.* (McKinney 2014).

Under New York law, a breach of contract claim requires proof of "the existence of a contract, the plaintiff's performance pursuant to the contract, the defendant's breach of his or her contractual obligations, and damages resulting from the breach." *Dee v. Rakower*, 112 A.D.3d 204, 208-09 (N.Y. App. Div. 2d Dep't 2013) (internal citations omitted).

### B.     Existence of a Contract

Guardian has presented evidence sufficient to establish that Defendants owe it a debt. Guardian offers as evidence contracts bearing Individual Defendants' signatures, evidence that Guardian lent Defendants money in performance of its obligations under those contracts, and evidence that Defendants did not pay it back. Individual Defendants, therefore, must put forth evidence sufficient to show that there is a genuine issue for trial. They claim that Guardian

"slip[ped] in" individual promissory notes with the contracts that they were signing on behalf of Liberty. (Dkt. No. 38, Defendant Rocha's Response, at 1.) Consistent with the general policy to read pro se papers to raise the strongest arguments they suggest, *e.g.*, *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006), the Court interprets Individual Defendants' papers as raising the affirmative defense of unconscionability and as asserting that the individual promissory notes were never formed as enforceable contracts.

### 1. Unconscionability

Individual Defendants allege that the personal promissory notes were unconscionable because Guardian's practice was to require agents to sign promissory notes without drawing attention to the fact that the agreements expose them to personal liability. Under New York law, "[a] determination of unconscionability generally requires a showing that the contract was both procedurally and substantively unconscionable when made—i.e., some showing of an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *Gillman v. Chase Manhattan Bank, N.A.*, 73 N.Y.2d 1, 10 (1988) (internal quotation marks and citations omitted).

"The procedural element of unconscionability requires an examination of the contract formation process and the alleged lack of meaningful choice." *Id.* at 10. The inquiry is a discretionary one and courts are to look to a variety of factors to determine whether a contract is procedurally unconscionable. "The focus is on such matters as the size and commercial setting of the transaction, whether deceptive or high-pressured tactics were employed, the use of fine print in the contract, the experience and education of the party claiming unconscionability, and whether there was disparity in bargaining power." *Id.* at 10-11.

The substantive element of unconscionability requires the party seeking to avoid the contract to prove that its terms unreasonably favor one party over the other. *E.g.*, *State v. Avco*

*Fin. Serv. of New York Inc.*, 50 N.Y.2d 383, 389 (1980).  While the general unconscionability standard requires both procedural and substantive unconscionability, occasionally a contract is so outrageous that a court will reject it even where it appears procedurally conscionable.  *State v. Wolowitz*, 96 A.D.2d 47, 67 (N.Y. App. Div. 2d Dep't 1983).

Under New York law, unconscionability is an affirmative defense for which the Defendants in this case would have the burden of proof.  *E.g.*, *Lawrence v. Miller*, 48 A.D.3d 1, 6 (N.Y. App. Div. 1st Dep't 2007).  Individual Defendants have not put forward evidence sufficient to lead any reasonable juror to conclude that the promissory notes were procedurally or substantively unconscionable.  The bare allegation that Guardian "slip[ped] in" the promissory note is not supported by evidence.  (Dkt. No. 38, Defendant Rocha's Response, at 1.)  The promissory notes were memorialized in documents separate from the agreements signed by the LLC.  (*E.g.*, Dkt. No. 29-2, Plaintiff's Exhibit 13, at 2.)  Furthermore, the undisputed evidence indicates that Individual Defendants are reasonably sophisticated businesspeople.  It is undisputed that all are registered securities brokers.  (*See* Pl.'s 56.1, at ¶¶ 4, 8, 10.)  Individual Defendants' pleadings evince their understanding of the concept of limited liability—if they did not know that LLCs are designed to limit personal liability, they would not be surprised to learn they had personal liability.  And they knew to expect limited liability when they signed documents on behalf of the LLC, so they must also have known to expect personal liability when they signed documents on their own behalf.

Finally, with regard to substantive unconscionability, Individual Defendants have not met their burden of producing evidence that the contract terms were outrageous.  New York courts have held this exact contract valid under New York law.  *See The Guardian Life Ins. Co. of*

*America v. Mogul*, Index No. 603809/2007 (N.Y. Supreme Ct. N.Y. Cnty. July 9, 2010).[3]  And while the terms of the contract certainly expose Defendants to some risk of liability, Defendants have offered no evidence or argument to support the conclusion that it is "outrageous" to require a personal guarantee when providing a very large rotating line of credit to an entity with limited liability.  Because Individual Defendants have not met their burden of offering evidence that the contracts were procedurally unconscionable, the contract passes the test for substantive unconscionability because individual Defendants have not met their burden of producing evidence that it is outrageous.  *See Wolowitz*, 96 A.D.2d 47.

### 2. Failure to Form a Contract

Defendants next argue that they ought to be relieved of liability because they never actually formed a contract with Guardian.  Defendants' papers could fairly be read to assert that they did not read the promissory notes when they signed them.[4]  Under New York law, if Individual Defendants' failure to read the agreements is attributable to Guardian, Defendants might be able to argue that Guardian fraudulently induced them to sign the contract.  *See, e.g.*, *Augustine v. BankUnited FSB*, 75 A.D.3d 596, 597 (N.Y. App. Div. 2d Dep't 2010).

Guardian has offered evidence that Individual Defendants signed the contracts and that they understood that the notes would expose them to personal liability.  (Pl.'s 56.1, at ¶ 77.)  Under New York law, "[a] party is under an obligation to read a document before signing it, and

---

[3] In that case, Justice Charles Ramos issued his opinion and order from the bench.  The transcript is not available.  The Court is relying on Guardian's counsel's representation that this case concerned the same contract language at issue here.

[4] There is evidence that Rocha and Myers read the agreements.  (Pl.'s 56.1, at ¶¶ 64, 77.)  The Court treats Rocha's statement that Guardian slipped in the promissory notes as claiming that none of them read the notes.  On summary judgment, the Court views the evidence in the light most favorable to the non-movants, so the Court assumes that none of the Individual Defendants read the promissory notes.

cannot generally avoid the effect of the document on the ground that he or she did not read it or know its contents." *Augustine*, 75 A.D.3d at 597.  Individual Defendants, then, have the burden of showing that there is a genuine issue for trial.  Individual Defendants have offered no evidence other than the bare assertion that Guardian caused them not to read the promissory notes.  Individual Defendants, therefore, have not put forth sufficient evidence to establish a genuine issue of material fact as to the formation of the contract.

### C. Performance by Guardian

Guardian has presented evidence that Defendants owe it a debt—specifically, Guardian has presented a contract whose terms are undisputed, evidence that Defendants incurred debts under that contract that they have not paid, and evidence that it performed its end of the deal.  Individual Defendants assert that Guardian breached their agreements in several respects.  They bear the burden of producing evidence to raise a triable issue of fact as to Guardian's performance.

Individual Defendants assert that Guardian "routinely and continuously acted to undermine Liberty's efforts and deprive Liberty of substantial income and revenues."  (Dkt. No. 38, Defendant Rocha's Response, at 1.)  They assert that Guardian did this by (1) delaying the start of the agency arrangement by about three months, which "damaged Liberty's business and unfairly broke Liberty's momentum going forward"; (2) failing to "provide promised transition assistance to Liberty"; and (3) "withhold[ing] excessive commissions" and "roll[ing]-over expenses" from the time when Individual Defendants were Guardian employees.  (*Id.* at 1-2.)

First, Individual Defendants do not contend that their written agreements with Guardian required the agency relationship to begin at a specific time.  Instead, they argue that because "the career development manager agreement [that] commenced on September 16, 2004 was for a three-year term, Guardian improperly delayed the commencement of Liberty's general agency

8

[by waiting] until January 1, 2008, [and that s]uch delay damaged Liberty's business." (Dkt. No. 9, Counterclaim, at 8.)  But the general agency agreements do not specify that the start date must be at the termination of the prior agreement between the parties and Individual Defendants have not offered any evidence to support the conclusion that this was the parties' understanding.  Similarly, Defendants have not offered any evidence that this delay damaged their business.

Second, Individual Defendants have not offered any evidence to support their assertion that their agreements required Guardian to provide "transition assistance."  *Id.*  Guardian has offered proof that the written documents were fully integrated contracts that memorialized the entire agreement between the parties.  (*E.g.*, Pl.'s 56.1, at ¶ 152); *see also The Guardian Life Insurance Co. of America v. Kinder*, 663 F. Supp. 2d 544 (S.D. Tex. 2009) (finding an agreement with identical contract language fully integrated).  And Individual Defendants do not dispute this conclusion.  Either way, it is not clear what the transition assistance would have entailed or— assuming it was promised and withheld—what it would have been worth to Liberty.  Consequently, Individual Defendants have not raised a triable issue of fact that Guardian breached their agreements by failing to provide transition assistance.

Finally, Individual Defendants have not offered any evidence that Guardian *improperly* withheld commissions due to Liberty or that Guardian rolled over expenses from an earlier unrelated agreement.  Guardian acknowledges that it has withheld commission payments from Liberty, but has offered compelling—and undisputed—evidence that it did so in partial satisfaction of Liberty's unpaid debts.  (*See* Pl.'s 56.1, at ¶ 37.)  And Guardian's accounts bill Defendants for debts incurred only after the formation of the general agency relationship.  *Id.*  Individual Defendants have not put forth evidence that raises any doubt about these two facts.

### D.     Damages

There remains one potential dispute about the amount that Individual Defendants owe Guardian. Guardian has presented evidence that Individual Defendants owe $35,966.90 because Guardian covered their unpaid rental fees to a commercial landlord. Individual Defendants claim that they do not owe this debt because they never specifically agreed that Guardian would pay for the rentals on this lease. But Guardian has put forth undisputed evidence that they did, in fact, agree to this arrangement because they agreed that agency expenses covered directly by Guardian would be added to their debts under the rotating line of credit. (*Id.* at ¶ 37, 98.) Individual Defendants do not dispute that these are expenses incurred operating the agency. There is no triable issue of fact as to the amount of the debt.

### III.    Conclusion

For the foregoing reasons, Plaintiff's motion for summary judgment is GRANTED as to both its claims and Defendants' counterclaims. Judgment shall be entered against Defendants Liberty, Rocha, McIvor, and Myers, jointly and severally, in the amount of $832,117.83 plus pre-judgment interest that has accrued since December 31, 2013, calculated pursuant to New York law.

The Clerk of Court is directed to close the motion at docket number 26 and to terminate the case.

SO ORDERED.

Dated: July 28, 2014
      New York, New York

_____
J. PAUL OETKEN
United States District Judge

Copies of this order were mailed to Defendants, on July 28, 2014, at the following addresses:

Liberty Wealth Strategies, LLC
19515 North Creek Parkway
Bothell, WA 98011

Carlos Liberty Rocha,
7606 190th Place NE
Arlington, WA 98223

Kim Lee Myers
7439 NE 203rd Lane
Kenmore, WA 98028

Sean Frank McIvor
10512 124th Avenue NE
Kirkland, WA 98033